**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No. 19-cv-2517-WJM-KLM

STANLEY L. O'BANION,

      Plaintiff,

v.

ANDRE MATEVOUSIAN, and
J.E. KRUEGER,

      Defendants.

---

**ORDER ON RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE**

---

This matter is before the Court on (1) the June 30, 2020 Recommendation of United States Magistrate Judge Kristen L. Mix that Plaintiff's Motion for a Preliminary and Permanent Injunction ("PI Motion") (ECF No. 38) be denied ("First Recommendation") (ECF No. 43); and (2) the August 14, 2020 Recommendation of Judge Mix that Defendants' Motion to Dismiss (ECF No. 19) be granted in part and denied in part, and that Defendants' Motion for Partial Summary Judgment (ECF No. 20) be granted ("Second Recommendation") (ECF No. 48). The Recommendations are incorporated herein by reference. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b). For the reasons set forth below, the First Recommendation is adopted, and the Second Recommendation is adopted in part and rejected in part.

## I.  BACKGROUND

### A.    Factual Allegations

The following allegations are taken from Plaintiff's Complaint (ECF No. 1) and

are assumed to be true for purposes of this Order.  Plaintiff is an inmate housed in

United States Penitentiary – Administrative Maximum in Florence, Colorado ("ADX"),[1]

and is proceeding in this matter *pro se*. (¶ 3.)[2]  Plaintiff is confined in ADX's "B-Unit"

(also referred to by the parties as the "Control Unit"), and/or ADX's Special Housing

Unit ("SHU").[3]  (¶ 7.)  Defendant Andre Matevousian is the warden of ADX (¶ 4),[4] and

Defendant J.E. Krueger is the Regional Director of the Federal Bureau of Prisons

("BOP")'s North Central Region (¶ *5*).

　　For reasons unspecified in his Complaint, Plaintiff is unable to purchase items

from the ADX commissary.  (¶ 10.)  He alleges that on August 15, 2018, in violation of

ADX policy, Matevousian discontinued providing free toothpaste and soap to inmates in

the Control Unit and SHU who cannot purchase items from the commissary.  (¶¶ 8, 10.)

The same day, Plaintiff filed an administrative grievance against Matevousian, asking

Matevousian to resume providing Plaintiff with free toothpaste and soap.  (¶ 10.)  On

August 22, 2018, Matevousian ordered Plaintiff moved to the SHU, allegedly in

retaliation for filing this grievance.  (¶ 27.)  Also apparently beginning around this time,

---

[1]  ADX is one of several facilities located within the Federal Correctional Complex in Florence, Colorado ("FCC Florence").  (ECF No. 41-3 at 2, ¶ 1.)

[2]  Citations to a paragraph number, without more, are to paragraphs in Plaintiff's Complaint (ECF No. 1).

[3]  Defendants assert that ADX does not have a SHU.  (ECF No. 41 at 8.)  The veracity of this assertion is immaterial for purposes of this Order.

[4]  Defendants assert that Matevousian is no longer the warden of ADX.  (ECF No. 41 at 2.)  To the extent that this is true, Matevousian's successor will be automatically substituted as a party with respect to Plaintiff's claims against Matevousian in his official capacity.  *See* Fed. R. Civ. P. 25(d)(1); *Soc. of Separationists v. Pleasant Grove City*, 416 F.3d 1239, 1241 n.2 (10th Cir. 2005).

Plaintiff was deprived of one hour of recreation per week, for six months.  (¶ 28.) Plaintiff did not receive toothpaste and soap again until August 28, 2018.  (¶ 10.)

On September 22, 2018, Matevousian ordered Plaintiff "moved into a filthy cell formerly occupied by a mental health prisoner," and denied Plaintiff soap or disinfectant with which to clean the cell.  (¶ 16.)  Plaintiff subsequently filed an administrative grievance regarding this incident.  (¶ 29.)

From October 17 to 28, 2018, Matevousian again refused to provide Plaintiff with toothpaste and soap.  (¶ 17.)  Additionally, on October 15, 2018, Matevousian ordered that Plaintiff's mail be intercepted and opened.  (¶¶ 30–31.)  Plaintiff was deprived of his mail until October 25, 2018.  (¶ 30.)  On October 22, 2018, Plaintiff wrote to Krueger, detailing the various ways in which Plaintiff felt his legal rights were being violated.  (¶ 32.)

On November 2, 2018, Plaintiff appealed one of his previously filed administrative grievances to Krueger.  (¶ 18.)  On November 30, 2018, Krueger stated "that he 'concurs' with Defendant Matevousian's denial of soap and toothpaste" to Plaintiff.  (*Id.*)

On November 14, 2018, Plaintiff filed a third administrative grievance, seeking redress for the denial of credit for time spent in the Control Unit.  (¶ 34.)  The following morning, ADX officials told Plaintiff that he must either "accept a pork meal or not eat at all."  (¶ 34.)  Plaintiff is Muslim.  (*Id.*)  At the evening meal the same day, ADX officials again required Plaintiff to either eat a pork meal or not eat at all.  (¶ 35.)  On November 16, 2018, Matevousian ordered ADX officials not to provide Plaintiff with his morning meal.  (¶ 36.)

3

On November 29, 2018, the toilet in Plaintiff's cell began continuously flushing. (¶ 37.)  The toilet flushed all day and night for thirteen days, preventing Plaintiff from being able to sleep.  (*Id.*)  Plaintiff made numerous written and verbal requests for assistance with this issue, but Matevousian ordered ADX officers to ignore it.  (*Id.*)

On December 19, 2018, Plaintiff attended an "Administrative Remedy Resolution" with the Control Unit's Case Manager, regarding the denial of credit for Control Unit time.  (¶ 38.)  The Case Manager stated to Plaintiff that "all you have to do is cooperate with the Warden, like he said, and all this will end."  (*Id.*)  On February 19, 2019, Matevousian again ordered that Plaintiff be denied credit for time spent in the Control Unit.  (¶ 40.)

From May 15 to 28, 2019, Matevousian again refused to provide Plaintiff with toothpaste and soap.  (¶ 21.)

Finally, Plaintiff asserts that almost a year later,

> The week of March 31, 2020, I received no soap/toothpaste; the week of April 13, 2020, at 8:45 a.m., [Control Unit Counselor Rodney Leggitt] delivers soap/toothpaste to prisoners who are to receive this benefit[.]  All receive their issue, except Plaintiff; April 14, 2020, 9:55 a.m., Plaintiff had to stop [Leggitt] and tell him that I received no hygiene. [Leggitt's] response was "I didn't get you"; April 15, 2020, 9:00 a.m., Plaintiff receives soap/toothpaste; the week of April 20, 2020, [Leggitt] once again delivers hygiene to all prisoners, except Plaintiff; April 21, 2020, 10:22 a.m., Plaintiff once again has to stop [Leggitt] to question why I am again denied soap/toothpaste. [Leggitt's] response is: "I forgot you again."[5]

---

[5]  These block-quoted allegations appear in Plaintiff's PI Motion.  (ECF No. 38 at 2.) While the Court will consider these allegations in ruling on Plaintiff's PI Motion, it will not consider them in ruling on Defendants' Motion to Dismiss (ECF No. 19).  *See Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994) (in ruling on a 12(b)(6) motion to dismiss, a court

(ECF No. 38 at 2.)

Seeking damages as well as declaratory and injunctive relief, Plaintiff brings a Fifth Amendment procedural due process claim against Defendants, asserting that he has a constitutionally protected interest in toothpaste and soap, and that Defendants deprived him of these items without constitutionally sufficient process.  (ECF No. 1.) Plaintiff additionally asserts a First Amendment retaliation claim against Defendants, claiming that the adverse actions they subjected him to, as outlined above, were taken in response to Plaintiff filing administrative grievances.  (*Id.*)  And in his PI Motion, Plaintiff asks the Court to enter

> a preliminary and permanent injunction ordering defendants
> Matevousian and Krueger to cease the denial of the Federal
> benefit legislated by Congress i.e., soap and toothpaste, and
> restore hygiene service i.e., soap and toothpaste to Plaintiff
> O'Banion and to all prisoners confined in the ADX–MAX
> Control Unit and SHU as is Federal law.

(ECF No. 38 at 1 (citing ECF No. 1 at 21, ¶ 45).)

## B.    Procedural History

Plaintiff filed his Complaint on September 3, 2019 (ECF No. 1), and his PI Motion on April 27, 2020 (ECF No. 38).  On May 18, 2020, Defendants filed their Response to Plaintiff's PI Motion.  (ECF No. 41.)  On June 30, 2020, the Magistrate Judge entered her First Recommendation, concluding that the PI Motion should be denied.  (ECF No. 43.)  On July 14, 2020, Defendants filed their Partial Objection to the First Recommendation (ECF No. 45), and Plaintiff filed his Partial Objection to the First

---

is generally limited to the four corners of the complaint).

Recommendation on August 17, 2020 (ECF No. 49).

On December 23, 2019, Defendants filed their Motion to Dismiss, arguing that dismissal of Plaintiff's claims is appropriate under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).  The same day, Defendants also filed their Motion for Partial Summary Judgment.  (ECF No. 20.)  On January 15, 2020, Plaintiff filed his Response to Defendants' Motion to Dismiss (ECF No. 24), and Plaintiff filed his Response to Defendants' Motion for Partial Summary Judgment (ECF No. 26) the following day. Respectively on February 5 and 7, 2020, Defendants filed their Reply as to their Motion to Dismiss (ECF No. 34), and their Brief in Support of their Motion for Partial Summary Judgment (ECF No. 36).

On August 14, 2020, the Magistrate Judge entered her Second Recommendation, concluding that Defendants' Motion to Dismiss should be granted in part and denied in part, and that Defendants' Partial Motion for Summary Judgment should be granted.  (ECF No. 48.)  On August 31, 2020, Plaintiff filed his Motion to Obtain Partial Reconsideration by Magistrate Judge Mix, which the Court will construe as an objection to Judge Mix's Second Recommendation.[6]  (ECF No. 51.)  On September 14, 2020, Defendants filed a Response to Plaintiff's Objection.  (ECF No. 52.)

---

[6] *See, e.g.*, *McAdams v. CitiFinancial Mortg. Co., Inc. of N.Y.*, 2007 WL 9706512, at *2 (M.D. La. Mar. 1, 2007) (a motion for reconsideration of magistrate judge's report and recommendation is "an improper vehicle by which to express disagreement therewith").

## II.  LEGAL STANDARDS

### A.      Review of a Magistrate Judge's Recommendation

When a magistrate judge issues a recommendation on a dispositive matter,
Federal Rule of Civil Procedure 72(b)(3) requires that the district judge "determine *de novo* any part of the magistrate judge's [recommendation] that has been properly objected to."  An objection to a recommendation is properly made if it is both timely and specific.  *United States v. One Parcel of Real Prop. Known as 2121 E. 30th St.*, 73 F.3d 1057, 1059 (10th Cir. 1996).  An objection is sufficiently specific if it "enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute."  *Id.*  In conducting its review, "[t]he district court judge may accept, reject, or modify the recommendation; receive further evidence; or return the matter to the magistrate judge with instructions."  *Id.*

### B.      Review of a *Pro Se* Plaintiff's Pleadings

The Court must construe a *pro se* plaintiff's pleadings "liberally"—that is, "to a less stringent standard than formal pleadings filed by lawyers."  *Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009).  It is not, however, "the proper function of the district court to assume the role of advocate for the pro se litigant."  *Id.*; *see also Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989) ("[W]e will not supply additional facts, nor will we construct a legal theory for plaintiff that assumes facts that have not been pleaded.").

### C.      Rule 12(b)(2) Motion to Dismiss

The purpose of a motion to dismiss under Rule 12(b)(2) is to determine whether the Court has personal jurisdiction over a defendant.  The plaintiff bears the burden of

establishing personal jurisdiction, and may satisfy this burden by making a *prima facie* showing that personal jurisdiction over the defendants obtains. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008). If the presence or absence of personal jurisdiction can be established by reference to the complaint, the Court need not look further. *Id*. The plaintiff, however, may also make this *prima facie* showing by putting forth evidence that, if proven to be true, would support jurisdiction over the defendant. *Id*. "[A]ny factual disputes in the parties' affidavits must be resolved in plaintiff's favor." *Id*.

**D.      Rule 12(b)(6) Motion to Dismiss**

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim in a complaint for "failure to state a claim upon which relief can be granted." The Rule 12(b)(6) standard requires the Court to "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). In ruling on such a motion, the dispositive inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (internal quotation marks omitted). "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Id.* (quoting *Twombly*, 550 U.S. at 556).

8

**E.      Rule 56 Motion for Summary Judgment**

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994).  Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or, conversely, is so one-sided that one party must prevail as a matter of law.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248–49 (1986); *Stone v. Autoliv ASP, Inc*., 210 F.3d 1132 (10th Cir. 2000).  The Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial. *Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

## III.  ANALYSIS

**A.      First Recommendation (ECF No. 43)**

Plaintiff's PI Motion seeks a preliminary and permanent injunction ordering Defendants to restore the provision of toothpaste and soap to him and to all other prisoners confined in the ADX Control Unit and SHU.[7]  (ECF No. 38 at 1 (citing ECF No. 1 at 21, ¶ 45).)  In their Response to Plaintiff's PI Motion, Defendants argue that Plaintiff's request for injunctive relief is moot, and that in any event, Plaintiff fails to demonstrate that he is entitled to the injunctive relief he seeks.[8]  (ECF No. 41.)

---

[7]  The Court agrees with Defendants that Plaintiff does not attempt to and accordingly has failed to establish his standing to seek injunctive relief on behalf of any other ADX inmate.

[8]  At the outset, the Court further agrees with Defendants that, given the procedural posture of this case, entering a permanent injunction would be inappropriate at this time.  *See Fisher v. Okla. Health Care Auth.*, 335 F.3d 1175, 1180 (10th Cir. 2003) (party seeking

The Magistrate Judge recommended that Plaintiff's PI Motion be denied.  (ECF No. 43.)  In particular, the Magistrate Judge concluded that Plaintiff's request for injunctive relief is not moot, but agreed with Defendants that, because Plaintiff fails to establish a sufficient risk of irreparable harm, he is not entitled to a preliminary injunction.  (*Id*.)  The Court agrees with this analysis.

1.     Mootness

In their Objection, Defendants argue that the Magistrate Judge erred in concluding that Plaintiff's claims are not moot.  (ECF No. 45.)  Defendants' Objection was timely, and sufficiently specific to trigger the Court's *de novo* review as to this aspect of the Recommendation.  *See* Fed. R. Civ. P. 72(b)(3); *2121 E. 30th St.*, 73 F.3d at 1059.

The Court lacks subject matter jurisdiction over Plaintiff's request for injunctive relief if it is moot.  *See Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1109 (10th Cir. 2010).  "Mootness is standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)."  *Prison Legal News v. Fed. Bureau of Prisons*, 944 F.3d 868, 879 (10th Cir. 2019) (internal quotation marks omitted).  "Mootness is a threshold issue because the existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction."  *Id.*  "When a party seeks only equitable relief, as here, past exposure to alleged illegal conduct does not establish a present live controversy if unaccompanied by any continuing present effects."

---

permanent injunction must show, among other things, "actual success on the merits").

*McClendon v. City of Albuquerque*, 100 F.3d 863, 867 (10th Cir. 1996). "A party claiming that there is no longer a live case or controversy bears the burden of demonstrating mootness." *Kan. Judicial Review v. Stout*, 562 F.3d 1240, 1245 (10th Cir. 2009).

The Court's mootness analysis turns in part on the particulars of ADX policy regarding the provision of hygiene products to inmates. Defendants assert that "[i]n August 2018, [ ] ADX amended its policy regarding the provision and distribution of hygiene products to inmates" ("August 2018 Policy"). (ECF No. 41-1 at 3, ¶ 6.) A July 23, 2018 "Inmate Bulletin" sets forth the August 2018 Policy as follows:

> Effective Wednesday, August 15, 2018, hygiene supplies will be provided to indigent inmates only. An indigent inmate is defined as an inmate who has not had a trust fund account balance of at least $6.00 for the past 30 days.
>
> For those inmates whose funds are encumbered, you will be evaluated by your Unit Team on a case-by-case basis to determine if these items are appropriate for issue.
>
> Non-Indigent inmates may purchase hygiene products from the commissary.

(*Id.* at 7.)

An August 3, 2018 Inmate Bulletin further provides that, under the August 2018 Policy,

> The following hygiene items are available to **ALL** inmates:
>
>> Toilet paper
>> Razors
>> Toothbrushes
>> Combs
>
> The following items will be available each week to indigent inmates and those inmates with encumbered funds after

review of their account:

> 1 – tube toothpaste
> 4 – packets deodorant
> 1 – bottle "All-in-One" Shave, Shower, & Shampoo **
> > **This item replaces shaving cream, shampoo and
> > bar soap.

> For all others, the above items are available through the
> institution commissary.

(*Id.* at 9 (emphasis in original).)

On May 18, 2020, ADX released another Inmate Bulletin, which indicated that its

policy regarding the provision of hygiene products to inmates had been amended as

follows ("May 2020 Policy"):

> Beginning with the issuance of this bulletin, hygiene supplies
> will be available upon request to each inmate in B-Unit (and
> any ADX inmate in disciplinary segregation status) on
> Evening Watch in conjunction with the issuance of cleaning
> supplies on Tuesdays.  The following hygiene products will
> be available:

> 1 – tube toothpaste
> 4 – packets deodorant
> 1 – bottle "All-in-One" Shave, Shower, & Shampoo

> Additional hygiene supplies are still available for purchase
> through the institution commissary.

(*Id.* at 11.)

Initially, Defendants point out that the specific injunctive relief Plaintiff requests is

an order directing Defendants to "restore hygiene service *i.e.*, soap and toothpaste to

Plaintiff O'Banion and to all prisoners confined in the ADX[ ] Control Unit and SHU."

(ECF No. 38 at 7 (citing ECF No. 1 at 21, ¶ 45).)  Defendants contend that Plaintiff's

request for a preliminary injunction consequently is moot because, "[u]nder the May

12

2020 Policy Amendment, all Control Unit and disciplinary segregation-status inmates at ADX will be provided with hygiene items, including soap and toothpaste, free of charge on an ongoing basis."  (*Id.*)  In other words, Defendants argue that Plaintiff's PI Motion is moot because "the May 2020 Policy Amendment provides the relief Plaintiff seeks in his motion."  (ECF No. 41 at 8.)

This argument is clearly without merit.  As Defendants themselves acknowledge, the relief Plaintiff ultimately seeks is weekly provisions of toothpaste and soap.  Plaintiff was supposed to receive these items on a weekly basis under the August 2018 Policy, but he describes many instances in which he did not.  The May 2020 Policy appears to be, in effect, identical to the August 2018 Policy, with the exception that Plaintiff now must request toothpaste and soap if he is to receive those items.  At this stage of the proceedings, it is an entirely open question whether Plaintiff will actually receive his weekly provisions of toothpaste and soap under the May 2020 Policy.  It therefore is impossible to afford credence to Defendants' argument that the May 2020 Policy "provides the relief Plaintiff seeks" in his PI Motion.  Accordingly, Defendants have failed to carry their burden of establishing that Plaintiff's request for injunctive relief is moot, and Defendants' Objection as to this aspect of the First Recommendation is overruled.  *See Kan. Judicial Review*, 562 F.3d at 1245.  The Court will adopt the First Recommendation in this respect.

2.   Irreparable Harm

The Magistrate Judge concluded that Plaintiff's PI Motion should be denied because Plaintiff has failed to demonstrate a sufficient risk of irreparable harm.  (ECF No. 43.)  Plaintiff's Objection (ECF No. 49) is sufficiently specific to trigger the Court's

*de novo* review as to this aspect of the First Recommendation.  *See* Fed. R. Civ. P. 72(b)(3); *2121 E. 30th St.*, 73 F.3d at 1059.

"To obtain a preliminary injunction, the moving party must demonstrate four factors: (1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that the injunction is in the public interest." *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009).  "[C]ourts should be especially cautious when granting an injunction that requires the nonmoving party to take affirmative action—a mandatory preliminary injunction—before a trial on the merits occurs." *Id.* (footnote omitted).  Courts require a party seeking a mandatory injunction "to make a heightened showing of the four factors." *Id.* at 1209.  "[B]ecause a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal." *Beltronics, USA, Inc. v. Midwest Inventory Distrib., LLC*, 562 F.3d 1067, 1070 (10th Cir. 2009) (internal quotation marks omitted).

"Because a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction, the moving party must first demonstrate that such injury is likely before the other requirements for issuance of an injunction will be considered." *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004) (internal quotation marks omitted).  "[A] plaintiff satisfies the irreparable harm requirement by demonstrating a significant risk that he or she will experience harm that cannot be compensated after the fact by monetary damages." *RoDa Drilling*, 552 F.3d at 1210.  Further, in order to demonstrate irreparable harm, the movant "must show that the injury complained of is of such

14

*imminence* that there is a clear and present need for equitable relief to prevent irreparable harm."  *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) (internal quotation marks omitted; alteration removed; emphasis in original).

In his PI Motion, Plaintiff argues that Defendants' refusal to provide him with weekly toothpaste and soap increases the likelihood that he will contract COVID-19 and become seriously ill or die.  (ECF No. 38.)  While the Court is sympathetic to Plaintiff's fears, it agrees with the Magistrate Judge that Plaintiff has failed to demonstrate a sufficient risk that such an outcome will actually occur.

The Court initially takes note of the following crucial and uncontested facts: (1) Plaintiff is only forty years old (ECF No. 41-3 at 20, ¶ 51); (2) Plaintiff has no underlying health conditions (*id.*); and (3) there have been zero confirmed cases of COVID-19 within the inmate and staff population of ADX, as well as zero confirmed cases within FCC Florence more broadly.  (*Id.* at 2, ¶ 5.)  Given Plaintiff's age and lack of underlying conditions, Plaintiff is not at an increased risk of severe illness from COVID-19 as compared to the general population, and this fact weighs significantly against his argument that he is at an imminent risk of serious illness or death.[9]  And the fact that there has not been a single case of COVID-19 at ADX, or any of the other facilities within FCC Florence, further casts serious doubt on the likelihood that Plaintiff will imminently become seriously ill or die.

Moreover, in addition to the numerous precautions regarding COVID-19 BOP

---

[9]  *See Groups at Higher Risk for Severe Illness*, Centers for Disease Control and Prevention, *available at* https://www.cdc.gov/coronavirus/2019-nCoV/index.html (last updated Sept. 11, 2020).

has taken on a national level (*see id.* at 3–9, ¶¶ 7–21), FCC Florence and ADX in particular have taken significant steps to curtail the spread and transmission of the virus, and indeed, to prevent it from entering the facility entirely.  For instance, FCC Florence has (1) provided inmates and staff with information and education as to best practices in limiting the spread of the virus (*id.* at 10–12, ¶¶ 26–28); (2) implemented extensive testing, screening, and quarantine procedures (*id.* at 12–18, ¶¶ 29–46); (3) provided inmates and staff with personal-protective equipment (*id.* at 14, ¶ 31; 18, ¶ 48); and (4) "prioritiz[ed] immediate medical care for anyone who claims symptoms indicative of a COVID-19 infection" (*id.* at 16, ¶ 36).  It cannot be doubted that these measures further decrease the risk that Plaintiff will contract the virus in the first place, much less become seriously ill or die.

In sum, given (1) not a single case of COVID-19 has been confirmed at FCC Florence; (2) Plaintiff is not at an increased risk of serious illness or death should he contract COVID-19; and (3) ADX and FCC Florence have instituted significant measures directed at preventing the transmission of and mitigating the harm from COVID-19, the Court concludes that Plaintiff has failed to demonstrate a sufficient risk of irreparable harm.  *See, e.g.*, *Betancourt Barco v. Price*,  — F. Supp. 3d —, 2020 WL 2099890, at *9 (D.N.M. May 1, 2020) (concluding that the inmate-plaintiffs failed to demonstrate irreparable harm because they "have not shown that they have medical conditions that put them at a higher risk of serious illness or death should they contract COVID-19 or that the safeguards and precautions in place at [their facility] are inadequate to prevent them from being exposed to COVID-19").

For the reasons set forth above, the First Recommendation (ECF No. 43) is

adopted.  Because Plaintiff has failed to demonstrate a sufficient risk of irreparable harm, his PI Motion is denied.

**B.      Second Recommendation (ECF No. 48)**

        1.    <u>Defendants' Motion to Dismiss (ECF No. 19)</u>

            a.    *Personal Jurisdiction Over Krueger*

Defendants argue, and the Magistrate Judge agreed, that the Court lacks personal jurisdiction over Krueger.  The only reference to personal jurisdiction in Plaintiff's Objection (ECF No. 49) is in the following quotation: "'District court erred in deciding motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) without giving Plaintiff opportunity to answer defendant's affidavit and, if need be, to have discovery.'[10]  Therefore, the procedures followed by Defendant Matevousian [were] constitutionally [in]sufficient."  (ECF No. 51 at 7 (second alteration in original).)  In light of Plaintiff's *pro se* status, the Court considers Plaintiff's Objection to be sufficiently specific to trigger the Court's *de novo* review on this issue.  *See* Fed. R. Civ. P. 72(b)(3); *2121 E. 30th St.*, 73 F.3d at 1059.

"To obtain personal jurisdiction over a nonresident defendant, the plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment."  *Benton v. Cameco Corp.*, 375 F.3d 1070, 1075 (10th Cir. 2004).  Colorado's long-arm statute confers personal jurisdiction to the maximum extent permitted by the Fourteenth Amendment.  *Dudnikov*, 514 F.3d at 1070 (citing *Archangel*

---

[10]  Plaintiff incorrectly attributes this quotation to *Meetings & Expositions, Inc. v. Tandy Corp.*, 490 F.2d 714 (2d Cir. 1974).

*Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1193 (Colo. 2005)).  Thus, the Court maintains personal jurisdiction over Defendants to the extent that doing so is consistent with due process.  *Id.*

"[T]o exercise jurisdiction in harmony with due process, defendants must have 'minimum contacts' with the forum state, such that having to defend a lawsuit there would not 'offend traditional notions of fair play and substantial justice.'"  *Dudnikov*, 514 F.3d at 1070 (quoting *Int'l Shoe Corp. v. Washington*, 326 U.S. 310, 316 (1945)).  "A court may, consistent with due process, assert *specific* jurisdiction over a nonresident defendant if the defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities."  *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1090–91 (10th Cir. 1998) (internal quotation marks omitted; emphasis in original).  A court may also exercise "general" personal jurisdiction over a defendant, where jurisdiction is not related to the events giving rise to the suit, if the defendant's "affiliations with the State are so continuous and systematic so as to render them essentially at home in the forum State."  *Daimler AG v. Bauman*, 571 U.S. 117, 128 (2014) (internal quotation marks omitted).

Initially, Plaintiff asserts that Krueger, as BOP's North Central Regional Director, "had [r]egional oversight for the operations of" ADX (¶ 5), and that he has supervisory responsibility over Matevousian (¶ 24).  Plaintiff further makes a host of vague and conclusory allegations against Krueger, including: (1) Matevousian "had the approval" of Krueger in denying Plaintiff toothpaste and soap (¶ 15); (2) Krueger "concurr[ed], plann[ed], and aide[d] and abett[ed] with Defendant Matevousian" (¶ 24); (3) Krueger

18

"did not adequately supervise Defendant Matevousian" (¶ 43); and (4) Krueger "encourag[ed] the continuation" of Matevousian's alleged misconduct (*id.*).  The Court need not and will not accept these conclusory allegations as true.  *See Ridge at Red Hawk*, 493 F.3d at 1177.  And in any event, "it is not reasonable to suggest that federal prison officials may be hauled into court simply because they have regional and national supervisory responsibilities over facilities within a forum state."  *Hill v. Pugh*, 75 F. App'x 715, 719 (10th Cir. 2003).

The only arguably well-pled allegation in Plaintiff's Complaint probative of personal jurisdiction over Krueger is that, after Plaintiff appealed one of his administrative grievances to Krueger, "Krueger state[d] that he 'concurs' with Defendant Matevousian's denial of soap and toothpaste."  (¶ 18.)  Given Plaintiff's *pro se* status, the Court can reasonably infer from this allegation that Krueger communicated his approval of Matevousian's actions to Plaintiff via mail sent to ADX.

In the Court's view, Krueger's single contact with Colorado arising out of his denial of Plaintiff's administrative grievance is insufficient for the Court to assert personal jurisdiction over him.  *See C5 Med. Werks, LLC v. CeramTec GMBH*, 937 F.3d 1319, 1323–24 (10th Cir. 2019).  The Tenth Circuit has "repeatedly held that the mere fact that individuals . . . residing in other states, review and deny inmate grievances for prisoners housed in Colorado is insufficient to render them subject to personal jurisdiction in Colorado."  *Gowadia v. Stearns*, 596 F. App'x 667, 670 (10th Cir. 2014) (citing *Durham v. Hood*, 412 F. App'x 127, 130 (10th Cir. 2011)) (internal quotation marks omitted).  The Court accordingly concludes that Plaintiff has failed to demonstrate that personal jurisdiction exists over Krueger, and Defendants' Motion to

19

Dismiss will be granted as to all claims against Krueger.  Plaintiff's claims against

Krueger will be dismissed without prejudice.  *See Brereton v. Bountiful City Corp.*, 434

F.3d 1213, 1218 (10th Cir. 2006).

           b.       Bivens *Claims Against Matevousian*

      Plaintiff brings claims for damages against Matevousian in his individual capacity

under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S.

388 (1971).

      The Magistrate Judge recommended that Plaintiff's *Bivens* claims be dismissed

because they present a "new context" for such claims, and because there are special

factors counseling hesitation as to extending the *Bivens* remedy in this case.[11]

Plaintiff's Objection does not address this aspect of the Second Recommendation, so

the Court reviews only for clear error.  *See Summers v. Utah*, 927 F.2d 1165, 1167

(10th Cir. 1991).  The Court sees no error in the Magistrate Judge's analysis, and the

Second Recommendation is therefore adopted as to this aspect of Defendants' Motion

to Dismiss.  Defendants' Motion to Dismiss as to Plaintiff's *Bivens* claims against

Matevousian is granted, and those claims are dismissed with prejudice.

---

[11] In *Bivens*, the Supreme Court held that an implied, private right of action for damages exists for a Fourth Amendment unlawful search and seizure claim against federal officials.  *Id.* The Court, however, has since made clear that "expanding the *Bivens* remedy is [ ] a disfavored judicial activity."  *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017) (internal quotation marks omitted).  Indeed, for over thirty years, the Court "has consistently refused to extend *Bivens* to any new context or new category of defendants."  *Id.* (internal quotation marks omitted).  In particular, "[i]f the case is different in a meaningful way from previous *Bivens* cases decided by [the Supreme Court], then the context is new."  *Id.* at 1859.  In such new contexts, "a *Bivens* remedy will not be available if there are special factors counseling hesitation in the absence of affirmative action by Congress."  *Id.* (internal quotation marks omitted).

      c.     *Claims for Damages Against Matevousian in his Official Capacity*

The Magistrate Judge recommended that Plaintiff's claims for money damages against Matevousian in his official capacity be dismissed because they are barred by the Eleventh Amendment.  (ECF No. 48.)  Plaintiff's Objection did not specifically address this aspect of the Second Recommendation, so the Court reviews only for clear error.  *See Summers*, 927 F.2d at 1167.  Finding none, the Court adopts this portion of the Second Recommendation as well.  Defendants' Motion to Dismiss is granted as to Plaintiff's claims for damages against Matevousian in his official capacity, and those claims are dismissed with prejudice.

      d.     *First Amendment Claim, Seeking Injunctive Relief Against Matevousian in his Official Capacity*

The Magistrate Judge concluded that Defendants' Motion to Dismiss should be denied as to Plaintiff's First Amendment claim for injunctive and declaratory relief. (ECF No. 48 at 23.)  Defendants did not object to this aspect of the Second Recommendation, so the Court reviews only for clear error.  *See Summers*, 927 F.2d at 1167.  The Court sees no clear error in the Magistrate Judge's analysis, and the Second Recommendation is adopted as to this aspect of Defendants' Motion to Dismiss.  Defendants' Motion to Dismiss is denied as to Plaintiff's First Amendment claim for injunctive and declaratory relief.

      e.     *Fifth Amendment Claim, Seeking Injunctive Relief Against Matevousian in his Official Capacity*

The Magistrate Judge further concluded that Defendants' Motion to Dismiss should be granted as to Plaintiff's Fifth Amendment procedural due process claim. Plaintiff's Objection to this aspect of the Second Recommendation is sufficiently

specific to trigger the Court's *de novo* review.  *See* Fed. R. Civ. P. 72(b)(3); *2121 E. 30th St.*, 73 F.3d at 1059.

Plaintiff argues that he has a constitutionally protected property interest in toothpaste and soap, and that Defendants deprived him of this property without adequate process in violation of the Fifth Amendment's due process clause.[12]  (*See* ECF Nos. 1, 51.)  Defendants counter, and the Magistrate Judge agreed, that Plaintiff has failed to adequately plead the existence of a constitutionally protected property interest in toothpaste and soap.  (*See* ECF Nos. 19, 48.)

A prison inmate raising a Fifth Amendment procedural due process claim must establish (1) "there exists a liberty or property interest of which [he or she] has been deprived," and (2) "the procedures followed by the [Government] were constitutionally [in]sufficient."  *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011).  The Court is "to review property and liberty interest claims arising from prison conditions by asking whether the prison condition complained of presents 'the type of atypical, significant deprivation in which a State might conceivably create a liberty [or property] interest.'"  *Cosco v. Uphoff*, 195 F.3d 1221, 1224 (10th Cir. 1999) (per curiam) (quoting *Sandin v. Conner*, 515 U.S. 472, 477–84 (1995)) (alteration in original; footnote omitted).

For instance, in *Sandin*, the Supreme Court held that the inmate-plaintiff lacked a constitutionally protected liberty interest in being free from temporarily placed in

---

[12]  Defendants argue that Plaintiff's failure in his Complaint to explain *why* he cannot purchase items from the commissary is fatal to his claim.  In the Court's view, this argument is a nonstarter.  To the extent Plaintiff's allegations in this respect are too vague to be entitled credence (a highly questionable proposition), in light of Plaintiff's *pro se* status, the Court can easily infer that he cannot purchase items from the commissary simply because he is indigent. And in any event, Defendants themselves concede that Plaintiff cannot purchase items from the commissary because his inmate trust account is "encumbered."  (ECF No. 41 at 5.)

disciplinary administrative segregation.  *Sandin*, 515 U.S. at 487.  In so holding, the Court noted that "[d]iscipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of [a] sentence imposed by a court of law," *id.* at 485, and that the plaintiff's "confinement did not exceed similar[ ] . . . confinement in either duration or degree of restriction."  *Id.* at 486.

Similarly, in *Cosco*, the inmate-plaintiff argued that he had a constitutionally protected property interest in possessing personal "hobby" and legal materials in his cell.  195 F.3d at 122.  Prison officials had limited the amount of personal property inmates could keep in their cells in response to the murder of a corrections officer.  *Id.* The Tenth Circuit held that, under the circumstances, such a deprivation was not "the type of atypical, significant deprivation [of their existing cell property privileges] in which a State might create a [property] interest."  *Id.* at 1224 (internal quotation marks omitted; alterations in original).

In the Court's view, the facts alleged by Plaintiff present far different, and far more severe and atypical circumstances than those present in *Sandin* and *Cosco*.  The Court notes initially that hygiene products are a basic human necessity.  Their importance cannot be overstated, especially in light of the COVID-19 pandemic. Moreover, it is crucial that, on the allegations, the deprivation of hygiene products was not effected in response to any kind of disciplinary infraction as in *Sandin*, or for safety reasons as in *Cosco*.  Indeed, the refusal to provide Plaintiff with toothpaste and soap was either done completely arbitrarily, or worse, in retaliation for Plaintiff's alleged exercise of his First Amendment rights.  As such, the Court has little difficulty in concluding Plaintiff has plausibly alleged that the deprivation of toothpaste and soap, in

many cases for almost two weeks at a time, constitutes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484.

Finding that Plaintiff has plausibly alleged a constitutionally protected property interest in toothpaste and soap, the question remains whether the process by which Defendants denied him of those hygiene products was constitutionally sufficient. *See Swarthout*, 562 U.S. at 219. The parties have not proffered any arguments regarding what is or is not constitutionally sufficient process under these circumstances, but it is clear from Plaintiff's allegations that no pre-deprivation notice or any other similar process was provided to him. While at this stage of the proceedings the Court will not speculate as to the extent of process to which Plaintiff may be entitled*,* it is enough for now to note that he was constitutionally entitled to *some* pre-deprivation process, and yet he received none. *See Wolff v. McDonnell*, 418 U.S. 539, 558–570 (1974). Accordingly, Plaintiff has plausibly alleged that Defendants violated his right under the Fifth Amendment to procedural due process. The Second Recommendation in this respect is therefore rejected, and Defendants' Motion to Dismiss as to Plaintiff's Fifth Amendment claim is denied.

f.     *Eighth Amendment Claim, Seeking Injunctive Relief Against Matevousian in his Official Capacity*

In her Second Recommendation, the Magistrate Judge assumed without deciding that Plaintiff intends to assert an Eighth Amendment claim, and concluded that Plaintiff has failed to plausibly allege a violation of the Eighth Amendment. The Magistrate Judge accordingly recommended that Defendants' Motion to Dismiss be

granted as to Plaintiff's Eighth Amendment claim, to the extent he brings such a claim at all.

In the Court's view, even in light of Plaintiff's *pro se* status, Plaintiff's Complaint cannot reasonably be read as asserting an Eighth Amendment claim.  Plaintiff's Fifth and First Amendment claims are clearly set forth in the headings "Claim One," and "Claim Two," respectively.  There is no "Claim Three" or Eighth Amendment heading, or any other indication that Plaintiff intends to bring an Eighth Amendment claim.  Indeed, Plaintiff's Complaint does not appear to mention the Eighth Amendment at all.  While Plaintiff's Complaint is entitled to a liberal construction, the Court will not craft a legal theory on his behalf.  *See Dunn*, 880 F.2d at 1197.  The Second Recommendation is accordingly rejected to the extent it interprets Plaintiff's Complaint as asserting an Eighth Amendment claim.

2.  <u>Defendants' Partial Motion for Summary Judgment (ECF No. 20)</u>

In their Partial Motion for Summary Judgment, Defendants seek judgment on Plaintiff's First Amendment retaliation claims against Matevousian and Krueger on the basis that Plaintiff failed to administratively exhaust those claims.  In her Second Recommendation, the Magistrate Judge agreed and concluded that this Motion (ECF No. 20) should be granted.  Plaintiff's Objection did not address this aspect of the Second Recommendation, so the Court reviews only for clear error.  *See Summers*, 927 F.2d at 1167.  Finding none, the Court adopts this portion of the Second Recommendation, and Defendants' Partial Motion for Summary Judgment is granted.  Defendants will be granted judgment on Plaintiff's First Amendment retaliation claims.

**C.      Leave to Amend**

The Court will grant to Plaintiff a **limited** leave to amend his complaint.  Any

amended complaint filed by  Plaintiff may **only** assert **new, additional** allegations in an

effort to (1) cure the jurisdictional defects in his Fifth Amendment claim against

Defendant Krueger, and (2) set forth an Eighth Amendment claim for injunctive relief,

should he wish to raise such a claim.  For completeness, Plaintiff is advised that this

amended complaint may include his Fifth Amendment due process claim, which the

Court has ruled will go forward.

Plaintiff is further instructed that he may *not* attempt to reassert his First

Amendment claim, because Defendants will be granted judgment on that claim as

explained above; and he additionally may *not* attempt to reassert his *Bivens* claims, or

his claims for damages against Defendants in their official capacities, as those claims

will be dismissed with prejudice as further explained above.

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.      The First Recommendation (ECF No. 43) is ADOPTED;

2.      Plaintiff's PI Motion (ECF No. 38) is DENIED;

3.      The Second Recommendation (ECF No. 48) is ADOPTED IN PART and

        REJECTED IN PART as follows:

        a.      The Second Recommendation is ADOPTED as to Defendants' Motion to

                Dismiss (ECF No. 19) Plaintiff's First Amendment claim, and Defendants'

                Motion for Partial Summary Judgment (ECF No. 20); and

        b.      The Second Recommendation is REJECTED as to Defendants' Motion to

26

Dismiss Plaintiff's Fifth Amendment claim, and to the extent it interprets Plaintiff's Complaint (ECF No. 1) as raising an Eighth Amendment claim;

4.     Defendants' Motion to Dismiss is GRANTED IN PART and REJECTED IN PART as follows:

    a.     Defendants' Motion to Dismiss is GRANTED as to (1) Plaintiff's *Bivens* claims, (2) Plaintiff's claims for damages against Defendants in their official capacities, and (3) all claims against Defendant Krueger; and

    b.     Defendants' Motion to Dismiss is DENIED in all other respects;

5.     Plaintiff's *Bivens* claims, and Plaintiff's claims for damages against Defendants in their official capacities, are DISMISSED WITH PREJUDICE;

6.     Plaintiff's claims against Defendant Krueger are DISMISSED WITHOUT PREJUDICE;

7.     Defendants' Motion for Partial Summary Judgment is GRANTED;

8.     Judgment will enter against Plaintiff and in favor of Defendants consistent with the above rulings at the conclusion of this action; and

9.     Plaintiff is GRANTED LEAVE to file **a single** amended complaint subject to the limits set forth in Part III.C of this Order.  Should Plaintiff wish to file an amended complaint, he must postmark and mail it to the Office of the Clerk no later than **October 16, 2020.**

Dated this 17th day of September, 2020.

BY THE COURT:

William J. Martinez
United States District Judge